IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEALERS SUPPLY COMPANY, INC.,   )
                                )
    Plaintiff,                  )
                                )
    v.                          )        1:03CV00654
                                )
CHEIL INDUSTRIES, INC.,         )
and SAMSUNG CHEMICAL (USA),     )
                                )
    Defendants.                 )

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

    Plaintiff Dealers Supply Co., Inc. ("Plaintiff") filed this action originally under breach of contract, negligent misrepresentation, and unfair and deceptive trade practice claims, all under North Carolina law, against Cheil Industries, Inc. ("Cheil") and Samsung Chemical (USA), Inc. ("Samsung") (collectively, "Defendants"). This court, on December 13, 2004, issued an order dismissing the breach of contract claim for failure to meet the statute of frauds. This court, furthermore, gave Plaintiff twenty days from the order's filing in which to file an amended complaint for its negligent misrepresentation claims. The court gave that time because Plaintiff's first complaint failed to meet Federal Rule of Civil Procedure 9(b)'s pleading requirements, which this court applied to the negligent misrepresentation claim. Before this court are Defendants'

motion to dismiss Plaintiff's negligent misrepresentation claim and unfair and deceptive trade practices claim and motion to strike parts of the amended complaint.  For the reasons stated below, the court will deny both motions.

## I. FACTUAL BACKGROUND

Plaintiff is a wholesale distributor of flooring and other solid surface materials.  Cheil, a Korean corporation, manufactures a solid surface material called Staron.  Cheil's subsidiary that sells Staron in the United States is Samsung.  On August 3, 2000, Kathy Lee, Defendants' agent, Sung Chun, national manager for Samsung, and Plaintiff's representatives met.  During that meeting, all the parties orally agreed that Plaintiff would be a Staron distributor for Defendants on the United States' eastern coast.  Since Staron was unknown on the east coast and any distributor would need to establish brand recognition, the distributorship would last seven years.  Plaintiff would also be the exclusive Staron dealer within a several-state area.

Following this meeting, Keith Edmonds, agent for Plaintiff, contacted Chun about memorializing the August 3 agreement in writing.  Chun told Edmonds that Defendants did not have formal distributorship contracts because Defendants and their distributors "were partners . . . and did not need a distributorship contract." (Am. Compl. ¶ 12.)  Chun, however, stated Defendants did have a written agreement with their west

2

coast distributor, and he would forward the agreement for Plaintiff's review. Chun then consulted with his supervisor and Director of Cheil's Staron Division Soo B. Choi. Choi agreed to the seven-year deal, and Chun then faxed a proposed agreement to Plaintiff on August 10, 2000, that included all of the August 3 agreement's material terms. Edmonds read the proposal and had concerns over some of its provisions. Chun told Edmonds to make the changes and return the proposal.

Edmonds, Chun, Choi, and Justin Lee, another representative of Defendants, then met on August 28, 2000. Edmonds brought up the agreement he faxed back to Defendants, with changes, and Choi stated he had read the document but did not believe he needed to sign it. Choi stated that he, in Korea, does such agreements by handshake; thus, Samsung's word was sufficient to consecrate the agreement. Choi and Russell Barringer, chairman for Plaintiff, shook hands.

Plaintiff alleges it made considerable investments in reliance upon the oral distributorship agreement and Defendants' representation that no written documents were necessary. Plaintiff, however, had trouble procuring sufficient inventory from Defendants, and a series of disagreements between Plaintiff and Defendants then developed. Defendants increased Plaintiff's sales requirements each year, sometimes very drastically, even though the oral agreement was that minimum sales requirements

would be set for the first three years, but thereafter the parties would mutually agree to the minimum requirement to be sold. During February 2003, Plaintiff heard rumors that someone else was selling Staron in its exclusive sales area. When Plaintiff asked Ricky Choe, one of Defendants' agents, about these rumors, Choe denied their validity. Defendants were actually in negotiations with another seller to take over Plaintiff's then-exclusive Virginia market. In early March 2003, Kathy Lee and Choe told Plaintiff they were considering removing his exclusive right to sell in South Carolina. Lee then stated she would reconsider the decision. Finally, Lee and Choe told Plaintiff in April 2003 that the distributorship would end, which terminated the seven-year agreement prematurely.

Plaintiff specifically points to several incidents to prove his negligent misrepresentation claim. They include the following: (1) Chun's August 3, 2000, statement that Defendants would need a long-term commitment from Plaintiff, and thus, Plaintiff would get a seven-year distributorship, (2) Chun's statement to Edmonds that Cheil and Samsung did not generally use written agreements, (3) Chun's representations in the proposed agreement of August 10, 2000, that Plaintiff would get a seven-year distributorship and that minimum sales requirements would be set for the first three years, but thereafter the parties would mutually agree to the minimum requirement, (4) Choi's August 28,

4

2000, representations that a handshake was sufficient to consecrate the deal, (5) Choe's February 2003 representation that Cheil and Samsung were not in negotiations with another distributor to take over part of Plaintiff's exclusive area, and (6) Lee's representation in March 2003 that Cheil and Samsung would reconsider taking South Carolina away from Plaintiff.

**II. ANALYSIS**

    A.   Motion to Dismiss Plaintiff's Negligent Misrepresentation Claim Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court must determine if the challenged pleading fails to state a claim upon which relief can be granted. The court is not to decide if a plaintiff will ultimately prevail, but, rather, the court must assess whether plaintiff should even be allowed to present evidence of his claim. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

The pleading setting the claim forth must be "liberally construed" in the light most favorable to the nonmoving party and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). A plaintiff need not plead detailed evidentiary facts,

5

and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978). "Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). Defendants make three arguments why this court should dismiss Plaintiff's negligent misrepresentation claim, each of which this court considers in turn.

    1. Plaintiff Bases the Claim on the Improper Allegation that a Contract Exists

Defendants first argue that Plaintiff wrongfully bases this claim on allegations that the parties had a contract. Plaintiff alleges that the parties exchanged documents and shook hands over certain terms for the distributorship, and Defendants' fraudulent statements occurred during these transactions. This court, in a prior order, ruled the parties had no enforceable contract because any distributorship agreements failed to satisfy the statute of frauds. (See Mem. Op. 12/13/2004 at 15.) Defendants argue that because the court held no enforceable agreement existed, the draft agreements cannot, as a matter of law, either be Defendants' representations or establish Plaintiff's negligent misrepresentation claim. The court held in the December 13,

6

2004, opinion that no writing proved a contract existed between the parties.  The court did not, however, comment on whether these draft agreements could be Defendants' representations in any other context.

Furthermore, while the statute of frauds is a defense to enforcement of an oral contract for the distributorship, "[t]he statute of frauds will not preclude a plaintiff's claims of fraud . . ., which do not sound in contract, [simply] because the statute of frauds is an affirmative defense to recovery on an oral contract."  72 Am. Jur. 2d <u>Statute of Frauds</u> § 4 (2005).  In <u>Kent v. Humphries</u>, 281 S.E.2d 43 (N.C. 1981), the plaintiff orally agreed to lease property from the defendant.  <u>Id.</u> at 44.  The plaintiff received the defendant's assurance that he would not conduct plastic and fiberglass manufacturing operations around the plaintiff's leased space.  <u>Id.</u>  The plaintiff began to lease the space in reliance on the defendant's assurance and on the oral agreement's terms.  <u>Id.</u> at 45.  When the plaintiff discovered the defendant conducting plastic and fiberglass manufacturing, the plaintiff sued for breach of lease agreement and fraudulent misrepresentation, among other claims.  <u>See</u> <u>id.</u> at 45-46.  The statute of frauds barred the plaintiff's contract-based claim, however.  <u>Id.</u> at 46.

The N.C. Supreme Court held that even though the statute of frauds barred the plaintiff's contract action, "it d[id] not bar

7

other claims [that] a party might have even though those claims arise in connection with the voidable [contract]." Id. Specifically, the defendant's assurance that he would not conduct any plastic or fiberglass operations could support a fraud-based claim. Id. Thus, [e]ven though the . . . contract is voidable, a party should not escape liability for alleged fraudulent statements made to a second party to induce that party [to rely on the fraudulent statements]." Id.

In the instant case, Plaintiff proffers evidence that the parties had an oral agreement, the terms of which are bolstered by the written documents. While this court held in the prior opinion that these documents did not satisfy the statute of frauds, that defense does not automatically preclude Plaintiff's fraud-based claim. The documents and oral agreement, furthermore, may prove Defendants made false representations to Plaintiff in order to induce Plaintiff's reliance. Thus, the proposed agreements can prove a case of negligent misrepresentation, and the court will not grant the motion simply because the statute of frauds barred the contract claim.

2. Plaintiff Fails to Meet the Heightened Requirements of Rule 9(b)

In the December 13, 2004, opinion, this court held the requirements of Federal Rule of Civil Procedure 9(b) applied to a negligent misrepresentation claim. Rule 9(b) provides: "In all averments of fraud . . ., the circumstances constituting fraud

8

. . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Defendants argue Plaintiff has failed to state a claim properly because Defendants Cheil and Samsung are lumped together. See McKee v. Pope Ballard Shepard & Fowle, Ltd., 604 F. Supp. 927, 931 (N.D. Ill. 1985) ("The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are 'lumped together' . . . ."). One of the rule's rationales is the defendant must know who made the alleged fraudulent assertions in order to respond to the allegations fully and effectively. Id. at 930-31.

Defendants claim Plaintiff lumps them together. This court, in the December 13, 2004, opinion, stated Plaintiff's allegation that "some representations were made by 'Cheil/Samsung'" was insufficient under Rule 9(b). (Mem. Op. 12/13/2004 at 22.) The court required more identification of who made what statement, and whether it could be attributed to one or both Defendants. In its amended complaint, Plaintiff identifies the actual person making the fraudulent representations, and Plaintiff states that agents for Samsung were agents for Cheil. Since Plaintiff has stated the actual name of each person who made a fraudulent assertion, and alleged that those people work for both Defendants, Defendants can fully respond to Plaintiff's

9

allegations. Any "lumping" occurs because Defendants allegedly share agents, which does not preclude either party from fully or effectively responding to the complaint. Defendants can ferret out which agents actually work for only one of them. Plaintiff's allegations are sufficiently particular to meet Rule 9(b)'s requirement.

        3.    Plaintiff's Claim Otherwise Fails as a Matter of Law

Defendants next argue that Plaintiff's claim fails as a matter of law. Under North Carolina law, "[t]he tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information." Fulton v. Vickery, 326 S.E.2d 354, 358 (N.C. Ct. App. 1985). "This determination of truth or falsity must be made at the time of the representation." Id. Two essential elements of the claim are "(1) the supplying by the defendant of false information, and (2) reliance on the false statement by the plaintiff." Vernon v. Steven L. Mabe Builders, 430 S.E.2d 676, 679 (N.C. Ct. App. 1993), rev'd on other grounds, 444 S.E.2d 191 (N.C. 1994). Defendants argue that Plaintiff's claim fails because it does not assert (1) Defendants supplied Plaintiff with false information,

10

(2) Defendants had a duty to disclose certain facts, and (3) Plaintiff relied upon the false information.

Paragraph 36 of the amended complaint states Defendants' alleged representations "were false, . . . were intended to deceive, and did in fact deceive." Plaintiff's allegations state the element of supplying false information without reasonable care. Plaintiff's allegations, furthermore, are sufficiently stated for Rule 9(b) because state of mind (negligence) may be "averred generally." See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Thus, Defendants' argument that Plaintiff has not alleged Defendants supplied Plaintiff with false information is without merit.

Furthermore, Defendants' argument that no duty to disclose information existed will not support dismissal. Defendants point to case law stating the claim's proponent must prove a duty to disclose when a fraud-based claim is based on nondisclosure. See, e.g., Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc., 477 S.E.2d 262, 265 (N.C. Ct. App. 1996) ("[A] duty [to disclose] must be shown for fraud claims based on an alleged failure to disclose."). Plaintiff's facts, however, show Defendants making affirmative misrepresentations to Plaintiff. Thus, this argument does not support dismissing the entire claim under Rule 12(b)(6).

11

Finally, Defendants argue Plaintiff could not have relied on their representations, thus arguing Plaintiff fails to establish justifiable reliance. This court originally stated that it "has doubts as to how Plaintiff could have reasonably relied on any of Defendants' alleged misrepresentations, especially considering Plaintiff's knowledge of the importance of a signed writing." (Mem. Op. 12/13/2004 at 19 n.6.) Even with the court's continuing doubts, Defendants point to nothing in Plaintiff's allegations that show, as a matter of law, Plaintiff has no cause of action under the facts as pled. Unless Defendants show case law stating that under these facts, reasonable reliance can never exist, the court will not address the propriety of arguments for and against Plaintiff's reliance. Such analysis is not appropriate at this stage unless Defendants show Plaintiff's claim fails as a matter of law. See State Props., L.L.C. v. Ray, 574 S.E.2d 180, 186 (N.C. Ct. App. 2002) ("The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion."). Thus, Defendants' argument is without merit, and the court will deny the motion on this ground.

> B. Defendants' Motion to Strike and Motion to Dismiss Plaintiff's Unfair and Deceptive Trade Practices Claim

Defendants also move for this court to strike, under Federal Rule of Civil Procedure 12(f), parts of the amended complaint that refer to the proposed agreements. Defendants argue

12

Plaintiff cannot refer to the agreement in the amended complaint because this court previously ruled those agreements did not meet the statute of frauds. As discussed above, however, Plaintiff may use those agreements and discussions to prove its negligent misrepresentation claim.

Defendants also move to dismiss the amended complaint's last claim if the court were to grant the motion to strike or motion to dismiss the unfair trade practices claim. Because the court will grant neither, discussion of the second motion to dismiss is unnecessary.

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss and Motion to Strike [23] is DENIED.

This the 4th day of January 2006.

/s/ William L. Osteen
United States District Judge

13